To extend U.S. v. Leon and Davis v. U.S. to the circumstances of this case, Justin Davis argues would essentially permit law enforcement to commit gross violations of the Fourth Amendment, to legitimize those violations with a search warrant, and then to claim reasonable reliance on the search warrant in order to, again, legitimize the violations that they committed under the Fourth Amendment. Perhaps under the circumstances of Davis v. U.S., this might have been reasonable. It's our position that under the case of U.S. v. Davis, this particular case, it's not reasonable. In Davis v. U.S., law enforcement was relying on precedent, binding precedent, and a long line of binding precedent, going back to the Belton case, prior to the decision of the United States Supreme Court in Arizona v. the case. Well, that wasn't the case in Barraza, so you better know that. Well, but what I think is the distinguishing factor between this case and Davis v. U.S., I think it also reflects on Barraza as well. There was a lot more uncertainty regarding GPS at the time of the Barraza use of that device than there was about this dog sniff. But there was a lot more litigation about GPS, at least in this circuit, than there was on dog sniff. So your argument is they should have known this was uncertain, and therefore we shouldn't cut them a break under Davis, but they relied on authority that was not under as much attack as the GPS case law. Well, the distinguishing factor is they relied on, in this case, maybe one or two cases, which is what there was in this circuit prior to the surge. In the Barraza case, there was a much broader number of cases that had been decided before that. One-eighth and one-ninth. What's that? One-eighth and one-ninth. But the GPS issue had been litigated more extensively than the dog sniff issue. The dog sniff issue is probably, I was going to say, newer. It's certainly newer than some of the other issues in Davis. Nevertheless, the other thing about the dog sniff issue in this case is you've got Scott, you've got Roby. It's our position that they are not congruous with the case that we have in this particular case. In our case, we're dealing with entry onto a private area, and again, an area that we consider to be the curtilage, an area over which the defendant has, at least under Jardine's now, property rights. And that wasn't the situation. I don't think that's clear at all. Well, that's our argument. It's one of the things we're arguing. The common walkway to an apartment building, it's not even as much curtilage as a hallway in an apartment building. It's certainly not like the front porch in Jardine. Well, it's our position, yes it is. In our position, it is not a common walkway. And it's actually in the search warrant affidavit appended to our brief, there's a photograph of the entry into the apartment in which Justin Davis was. So if a Girl Scout selling cookies couldn't go there without permission, how did you get to the doorbell? Again, I don't know that that's the right inquiry, because any time we talk about the curtilage of a building or whatever, certain Girl Scouts are entitled to go. There's no Fourth Amendment magic to the word curtilage. Well, under Jardine there is. The concept changes depending on the Fourth Amendment context. It does. But again, going back to the Girl Scout analogy, when we talk about the theory of a curtilage, a Girl Scout can actually enter the curtilage of a building. A law enforcement officer with a dog intending to sniff out, looking for evidence, that's a whole different set of circumstances. Except it's a common area, though. It's not just a single family residence. But our position is that it is not a common area. Now, there are two apartments. Right. So why doesn't that alone make it a common area? It's not like in Scott, where it was a common hallway to a whole number of apartments. What this is, is two apartments side by side, one private walkway leading to those two doors. Right. One common walkway leading to the other. Well, common to the two private residences that live there. My analogy would be more to a duplex, a patio in front of a duplex. That would be the curtilage. It wasn't a patio, it was a walkway. But it's our position that there's... The way you get to the front door. Our position is, from a constitutional standpoint, there's no real difference between a patio and a private walkway. And I guess the question that we have... Where did the curtilage begin? Where the common walkway left the sidewalk up? How many feet did it extend? All the way down? It's what the court said, where the private walkway begins. Where the common walkway ends and where the private walkway begins. All the way out to the front sidewalk of my home is curtilage. Well, in this case, it's one and a half car lengths, I think. So it's not... That's about my front walk in a city lot. Well, there is a line somewhere, obviously. And in this particular case... What do the cases say the line is? I don't know that there's an exact line. But in this case, it doesn't matter. Because in this case, the dog walked right up to the door, put the dog's nose up to the door and sniffed. I mean, wherever the line is, the dog was somewhere within that line. It's our... I don't know why you say that. But, I mean... This is Jardine's, essentially. Well, that was entering a porch. Entering a porch. That's different. Well, it's our position that it's not. I had the case where there was a long driveway up to a building over here and the front door here and the back door here. And as long as the housing code inspector just walked up to the front door, whatever he saw was in plain view. If he left off the common walkway, went around to the back door or went and looked in the garage for whatever might be in there. Now the Fourth Amendment analysis changes. That's the curtilage here. Well, it's our position that it is the curtilage, and obviously that's crucial to... The case I just cited... It's crucial to our analysis. It's inconsistent. Because there the whole Fourth Amendment issue was, well, okay, they saw all that, but they were inside the property. Yeah, they were up the common walkway in order to which anybody has to do to ring the front bell. And which case is this? I can't remember, but it was a crazy zoning case. It's a single-family residence? Yeah. And it's a front porch? No, it's a long walkway. And where is the law enforcement officer on the long walkway? Anytime he departed from the walkway to the front door, then you need a curtilage analysis. But if it's long, it's as if the public is invited to use the walkway to the front door. I mean, that's the whole purpose of having an entryway into the house. But even the curtilage cases, again, certain members of the public are invited to enter the curtilage, and I think the Girl Scout cookie analysis is one that's used. Girl Scouts can step on your porch, whereas, again, a law enforcement officer goes. Well, this was a government agent. Yeah, exactly. Who then presented what he saw to the prosecution. It's a reasonable expectation of privacy of whoever is coming up to your front door. Well, again, our argument isn't based on reasonable expectations of privacy. It's based on the property rights of the resident because that's what Jardine says. But it's the same thing, though. The property owner's property right to have a reasonable expectation of privacy to whatever area. The property owner's expectation is that, again, it varies as to who the individual is that's coming up. A newspaper delivery person, a Girl Scout selling Girl Scout cookies, somebody like that can come up to your front door. You have a reasonable expectation that a law enforcement officer with a dog isn't going to walk up to your door and place its. . . I don't think there's case law that says that. Well, I think that's, again, it's kind of circular for me to say this, but I think it's basically Jardine. Well, what if you hate the Girl Scouts? You don't want to be bothered by any of these. . . Put up a no trespassing sign. Yeah. I mean, it's an objective standard, obviously. It's not a subjective standard. It's an objective standard. And, again, our position is. . . Well, the reasonable expectation of privacy, as I understand it, does not differentiate among the audience. You either have an expectation of privacy or you don't. Well, I think it does, and I think it's always been considered to vary as to who's coming to your house. Obviously, relatives and friends can come to your house, open the porch, walk in, knock on the inside door. We're not talking about people invited beyond what's public. Well, you, again, mentioned Girl Scouts, selling Girl Scout cookies. But, you know, I was just trying to talk about there's no other way to get there than this walkway. Right. And law enforcement would certainly be able to walk up to the end of the walkway or even approach the house to a degree on the walkway, but to bring in a trained dog to the front door, place its nose right up to the door, and start sniffing for evidence. But why does that change? What does that change? Well, it's because an owner or a resident in a residence has reasonable expectations, either expectations of privacy or property interests that would. . . That that won't happen. That that will not happen. That the officer may come up and ring the doorbell for a knock and talk, but he won't bring his dog to sniff. Well, the officer can knock on the door. And that is the, actually, excuse me for pointing, but that's really the point of Jardine is that dog sniffs are different. You know, an officer may go up and knock on the inside door, but because of the extrasensory nature of dog sniff evidence, from a Fourth Amendment standpoint, that's a different kind of Fourth Amendment event. Still, it seems the biggest problem in your case is this is a common area. It's not just exclusively from property of the defendant. Well, that's a problem with my case if it's determined that it is a common area. It's our position that that point was not a common area. It was a private area. That's our position in this case. When did the dog first sniff out the dog? Well, he came right up to the door of apartment number five. I thought that he had to have sniffed before he put his snout to the door because that's why he went to the door. But he was led to apartment five, alerted to some degree, then was led to apartment seven, then returned to apartment five. That's the point. He was alerted on this common area. Well, again, we're not conceding it's a common area. It's common to the two apartments that were there. And that makes it common. But, again, I say that's analogous to a duplex. A duplex is a common area between two different occupants. Well, it's two different occupants, but if law enforcement were to enter an enclosed porch of a duplex owned by two individuals that live side-by-side in a duplex, we'd have the same Fourth Amendment issues we have here. Of course, it's different from Jardine, but we'd have the same property interests under those circumstances. But, you know, it seems to me there's a difference between marijuana odor and shoes that are evidence of a crime. If the dog can alert in a common area, it's because the owner has allowed the odor from his contraband to escape the area where he has a reasonable expectation of privacy. Yeah, into a common space. I mean, it's like it's into an open field. But isn't that really the point of Jardine is that a dog sniff is different. You and I, at least I can't go up to an apartment and sniff and know that there's But that was a single-family dwelling, that Jardine. Yes. And the dog was in a place that is private. Yes, that's our position, exactly. Well, this isn't. I mean, you say, well, it's okay, even if it's common, the dog can put his nose right up there. But what the dog alerted to was the odor of contraband, which the owner had allowed to escape the area where he has a reasonable expectation of privacy. And that's like talking about a crime out in an open field, assuming unwrongly that the cops aren't listening. Well, again, the cops can't smell the marijuana. It's because they have this dog, which in Jardine has been determined to be different. Out in the open field, they can use some very high-powered, very potent technology to overhear what couldn't be heard by the common ear. Mr. Davis wasn't in an open field. He was inside an enclosed building. And they used new technology, which essentially was the dog, to alert on the apartment from outside the building. It's different. If he was smoking it, had the windows open. Is this Mr. Davis? Yes. What technology were you talking about? The dog. Oh, wait a minute. Well, it's new technology. It's the dog. It's not new at all. What's new for drug interdiction, relatively speaking, we haven't seen until about the last decade or so. Yeah, because we're using them in World War II, if not centuries earlier. Not to interdict drug possession. But, yeah, so what? But it's different. It's different from, again, smoking marijuana in your living room with the windows open so that everybody walking by can. How is it different from using some kind of high-frequency interceptor to overhear conspirators in a public park plotting a crime? Well, in a public park, but using high-speed. I think a common area. Yeah. Out on the street corner. But Mr. Davis did not possess the marijuana in a public place. He possessed marijuana in a private. He escaped to a public place. Well, the odor of the marijuana escaped to what the court considers to be a public place, and I consider it to be the private curtilage of his apartment. Well, the Fourth Amendment is always interesting, and rightly so. Mr. Leifert. May it please the Court. Counsel, my name is Justin Leifert. I'm an assistant United States attorney from the Northern District of Iowa. The government does not believe there's a Fourth Amendment violation here, even after Jardines. But even if the court disagrees or decides not to reach that issue, the court can affirm under Davis and Leon. At the time of the search, this search occurred on December 12th of 2012, just over three months prior to Jardines being decided. At that time, Scott was binding law, and I believe Scott still is valid law in this circuit. I don't think Jardines does anything to overturn Scott. Two things were present in Scott. A sniff of an apartment door from an area where the officer and K-9 were lawfully present. The exact same two things were present here in this case. The only possible distinction is that here, the dog and officer were present where they were lawfully present outside, versus in Scott, the officer and the dog were lawfully present inside. That fact was not crucial to the holding in Scott. Scott noted, as this Court's talked about, there's no privacy interest in the odor of illegal narcotics that comes from outside of a door. And if anything, being on the outside, there'd be a less expectation of privacy. You can see that door from the road. You can't see the interior apartment door from the road. So I don't think the inside-outside distinction is any distinction in terms of whether Scott was binding circuit precedent, authorizing the officer's activity at the time. And the Supreme Court has said over and over again, the exclusionary rule requires police culpability, objective police culpability. There's simply none here. This was an authorized practice. The fact that Jardines was pending search had been granted. This Court recently in Barraza has said that doesn't matter in the context of Jones and the GPS. Even if Jardines was pending, it didn't give any indication how it was going to be decided. I would also note in the defendant's reply brief, the defendant has a portion of his reply brief saying that the government's waived its Davis argument because we did not raise it during the suppression hearing or in our written response to the suppression motion or an objection to the R&R. All of those things happened before Jardines was decided. So Davis was never applicable until Jardines was decided. So we certainly raised it at the first possible moment we've had in our brief here. In addition, there was also good faith in the validity of the warrant. Even if the warrant was based on an illegal predicate act, the dog sniff, it's still valid if it is close enough to the line of validity. And there's no good faith if it was a clearly illegal act. Well, four Supreme Court justices thought this was a lawful act, so I don't think you can say it was a clearly illegal act, especially in light of Scott and Roby, which were a valid law at the time. Now, I would like to get into the actual Fourth Amendment issue. If the Court decides to reach it, this would be an issue of first impression. I know in a different case from our district, United States v. Gibbons is being heard this Friday in a different panel with almost an identical issue as to whether Davis would apply. That was actually a dog sniff on an interior hallway, just like in Scott. That's being heard in Division 2 on Friday. But as of now, this is a... In an apartment building? It was an apartment building, yes, Your Honor. And so that's being heard on Division 2 on Friday. But as of now, this Court has not really construed Jardines and interpreted Jardines. But I think the Court has, through its questions to opposing counsel, focused on the proper inquiry. What Jardines had was they had three things, gathering information from the curtilage without explicit or implicit permission. Well, the distinguishing factor here is that this was not curtilage. This was an area that was a common area. Whether it's common between two people or ten people, it's still a common area. It's something that that individual... You know, Mr. Davis couldn't keep people from coming on that sidewalk because they could be coming to visit Mr. Davis's neighbor. And even if Mr. Davis didn't want them there, Mr. Davis alone didn't have any authority or ability to deny them access. And that's crucial because Jardines was decided on a trespass theory, not on an expectation of privacy theory. And as I noted in the brief, the Supreme Court... What if he lived in both of them? What's that, Your Honor? What if he and his family lived in both of them? If he and his family lived in both of them, it would be a slightly different inquiry. Then there could be an argument that that sidewalk was a private sidewalk. I still think it's a common sidewalk between two different buildings. That does... Be a lot harder case for you. It would be a lot more difficult case, exactly. But that's not the case here. And if you look at the photographs attached to the defendant's addendum, there's no porch there. There's no area that either occupant could use to set out a porch swing or anything they would want there. The sidewalk widens just slightly to reach the end of each door. Mailboxes were in the middle, on top of each other, in the middle of the two doors. Looks like what I'd call townhouses. It would be like a townhouse, Your Honor. That's a good analogy. And the Supreme Court, United States Supreme Court, in the Oliver case, has a footnote that says, The law of trespass recognizes the interest in possession and control of one's property and for that reason permits exclusion of unwanted intruders. The right to exclude is missing here. It was present in Jardines. It was missing here. And even the dissent in Jardines, the four Supreme Court justices who dissented, acknowledged that Jardines would not apply to common areas. In fact, in the dissent it said this case would not apply to a public sidewalk or a common corridor of a building. This is more like a public sidewalk, a common sidewalk, than a private one. So, Your Honor, we would ask that you affirm the district court. It could do that on a number of bases, finding that Davis applies regardless of the underlying issue, or the court could tackle the underlying Fourth Amendment issue to try to give some guidance to the law enforcement officers out there who are calling up every week asking if they can take a dog to a certain place. But either way, the district court should be confirmed. Unless there's further questions, I would just ask the court to do that. Thank you, Your Honors. Very good. Thank you. I think Mr. Burns used the sign. It's been well briefed, well argued. Interesting case. We'll take it under advisement.